UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**SHIRLEY HOUSTON**
  Plaintiff

**v.**  No. 5:09CV-00220-J

**MICHAEL ASTRUE**
  Commissioner of Social Security
  Defendant

**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Mark Pierce. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 13 and 14, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on August 10, 2007, by administrative law judge (ALJ) William Reamon. In support of his decision denying Title II benefits, Judge Reamon entered the following numbered findings:

  1. The claimant meets the insured status requirements of the Social Security Act through December 30, 2008.

  2. The claimant has not engaged in substantial gainful activity since May 21, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

  3. The claimant has the following severe impairment: right upper extremity sympathetic dystrophy (20 CFR 404.1520(c)).

  4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. She can lift can carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk about six hours each in an eight-hour workday. She should never climb ladders, ropes, or scaffolds, or crawl. Reaching in all directions including overhead, handling (gross manipulation), and fingering (fine manipulation) are limited in the right upper extremity. She should only occasionally reach including overhead, and occasionally perform fine manipulation. She can frequently handle. She should avoid concentrated exposure to extreme cold, vibration of hand-held tools, and hazards such as machinery and heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 31, 1953, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 21, 2004, through the date of this decision (20 CFR 404.1520(g)).

(Administrative Record (AR), pp. 12-23).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal

standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

3

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether

the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Medical profile

The plaintiff's past relevant work was that of commercial interior painter and wallpaper hanger. In May of 2004, she quit working due to difficulty using her right hand. In June of 2004, she underwent right carpal tunnel release surgery (AR, pp. 138-142). Following surgery, she developed a somewhat rare condition known as complex regional pain syndrome (CRPS) / reflex sympathetic dystrophy syndrome (RSDS).

The Social Security Administration has an entire Social Security Ruling, i.e., SSR 03-2p, devoted to evaluating cases involving CRPS / RSDS. According to SSR 03-2p:

> RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger RSDS/CRPS. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time.
>
> Although the pathogenesis of this disorder (the precipitating mechanism(s) of the signs and symptoms characteristic of RSDS/CRPS) has not been defined, dysfunction of the sympathetic nervous system has been strongly implicated.
>
> The sympathetic nervous system regulates the body's involuntary physiological responses to stressful stimuli. Sympathetic stimulation results in physiological changes that prepare the body to respond to a stressful stimulus by "fight or flight." The so-called "fight or flight" response is characterized by constriction of peripheral vasculature (blood vessels supplying skin), increase in heart rate and sweating, dilatation of bronchial tubes, dilatation of pupils, increase in level of alertness, and constriction of sphincter musculature.

5

Abnormal sympathetic nervous system function may produce inappropriate or exaggerated neural signals that may be misinterpreted as pain. In addition, abnormal sympathetic stimulation may produce changes in blood vessels, skin, musculature and bone. Early recognition of the syndrome and prompt treatment, ideally within 3 months of the first symptoms, provides the greatest opportunity for effective recovery.

*How Does RSDS/CRPS Typically Present?*

RSDS/CRPS patients typically report persistent, burning, aching or searing pain that is initially localized to the site of the injury. The involved area usually has increased sensitivity to touch. The degree of reported pain is often out of proportion to the severity of the precipitating injury. Without appropriate treatment, the pain and associated atrophic skin and bone changes may spread to involve an entire limb. Cases have been reported to progress and spread to other limbs, or to remote parts of the body.

Clinical studies have demonstrated that when treatment is delayed, the signs and symptoms may progress and spread, resulting in long-term and even permanent physical and psychological problems. Some investigators have found that the signs and symptoms of RSDS/CRPS persist longer than 6 months in 50 percent of cases, and may last for years in cases where treatment is not successful.

SSR 03-2p further provides as follows:

1. CRPS may be a basis for a finding of disability.

2. It is not a medical impairment listed in Appendix 1 of the regulations.

3. It manifests in intense pain that is out of proportion to the precipitating injury.

4. It may progress beyond the limb or body area originally involved.

5. The pattern of symptoms may not be entirely consistent due to the transitory nature of the objective findings and the complicated diagnostic process involved.

6. Claims involving CRPS are adjudicated using the sequential evaluation process, just as for any other impairment.

7. As in all Social Security disability cases, the opinion of a treating source is of great significance.

**Discussion**

On May 28, 2007, after the administrative hearing on May 9, 2007, the plaintiff's treating pain management specialist, Gay Richardson, M.D., completed the standard physical assessment form, finding among other things that the plaintiff's CRPS and myofascial pain disorder result in the following limitations (AR, pp. 276-279):

1. Lift/carry, none frequently, 10 pounds infrequently.

2. Stand/walk, average of 4 hours in an 8-hour workday due to edema, pain, reduced endurance, fatigue, and side-effects of medication.

3. Sit, average of 4 hours in an 8-hour workday.

4. Postural limitations consisting of very little to no climbing, occasional balancing, rare crouching and kneeling, and never kneeling and crawling.

5. The plaintiff is impaired in her ability to reach, handle, feel, and push/pull.

6. Environmental restrictions affecting her ability to work around heights, moving machinery, temperature extremes, chemical, fumes, humidity, and vibration.

7. She will require frequent unscheduled breaks, frequent rest periods, and frequent absences from work, especially in cold weather and will need to be accommodated in terms use of compression garments on the right upper extremity to protect from further injury, good orthopedic seating with arm rests, etc.

It is undisputed that acceptance of Dr. Richardson's findings would require an ultimate finding of disability in this case. The plaintiff's primary contention upon judicial review is that the ALJ was required to defer to Dr. Richardson's disabling assessment.

7

SSR 03-2p at footnote 3 provides that a "medical source opinion that an individual is 'disabled' or ... has a particular residual functional capacity (RFC) ... is an opinion on an issue reserved to the Commissioner [which is entitled to no] special significant ... because of its source." In other words, despite the unique nature of CRPS as a medical impairment, a treating source's opinion with respect to what an individual can do despite her impairment will be evaluated under the usual standards set forth at 20 C.F.R. § 404.1527(d) and especially § 404.1527(e) ("medical source opinions on issues reserved to the Commissioner"). The magistrate judge concludes that the ALJ did not err in declining to give "controlling or significant weight" to Dr. Richardson's disabling opinions, to-wit (AR, pp. 21-22) *(emphasis added)*:

> The undersigned finds no credible evidence of record to reduce the claimant's capacity for sitting or standing/walking as a result of a hand impairment. Treatment notes of Dr. Richardson indicate that she has had a very good response to treatment with reduced pain and increased function as well as endurance. The residual functional capacity assessed by Dr. Richardson is also inconsistent with physical therapy notes indicating solid improvement in right hand functioning. Dr. Richardson also found limitations for stooping, crouching, kneeling, and crawling, which bear no logical connection to a right upper extremity impairment. The undersigned finds that Dr. Richardson's assessment is not due controlling or significant weight in light of near normal physical examination, a very positive response to treatment and therapy, and the claimant's own reports to Dr. Richardson of significant improvement. **In reaching the claimant's physical residual functional capacity the undersigned has given great weight to the opinions of the non-examining State Agency program physicians.**

The plaintiff's contentions to the effect that "as a layman [the ALJ] saw no logical connection to what he erroneously considered only a 'hand' or 'right upper extremity impairment,'" the ALJ failed to take into account the effects of "fatigue, sleep disturbance, reduced endurance" on the plaintiff's "capacities for <u>sustaining</u> these activities," the ALJ effectively "substituted his own medical opinions for those of Dr. Richardson," etc., are well-taken (Docket Entry No. 13, p. 4). However, these arguments do not change the fact that the Commissioner simply is not required to

8

accept a disabling RFC assessment, especially one that is based primarily upon a claimant's pain and other subjective symptoms. "The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir., 2004)

The magistrate judge submits that the error in this case was not so much the ALJ's <u>rejection</u> of Dr. Richardson's RFC as his <u>acceptance</u> of that of the program physicians. To the extent the program physicians provided a substantial medical basis in support of the ALJ's RFC finding, the ALJ identified "good reasons," as contemplated by 20 C.F.R. § 404.1527(d)(2) and *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir., 2004), for rejecting Dr. Richardson's much more restrictive RFC. For the reasons set forth below, we shall conclude that the ALJ's reliance upon the opinions of the program physicians was insubstantial.

As a preliminary matter, the undersigned observes that, as arbiter of the ultimate disability decision, an ALJ who is inclined to find a claimant "not disabled" is rarely if ever bound by the disabling opinion of any particular physician. But on the other hand, as a lay individual, an ALJ is simply not qualified to interpret raw medical data in functional terms. Hence, typically, an ALJ's RFC finding must be supported by the opinion of at least one physician. In this case, the ALJ relied upon the opinions of the non-examining state agency program physicians in support of his RFC assessment.

In *Blakley v. Commissioner*, 581 F.3d 399, 409 (2009), the Sixth Circuit considered the circumstances in which the Commissioner's acceptance of the opinion of the state agency program physician in preference to that of the treating physician may be deemed supported by substantial evidence, to-wit:

9

Certainly, the ALJ's decision to accord greater weight to state agency physicians over Blakley's treating sources was not, by itself, reversible error. "In appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). One such circumstance may occur, for example, when the "State agency medical ... consultant's opinion is based on a review of a complete case record that ... provides more detailed and comprehensive information than what was available to the individual's treating source." Id.

Here, however, the Agency's non-examining sources offered their opinions, upon which the ALJ relied, on June 30, 2005, and September 21, 2005. Consequently, those non-examining sources did not have the opportunity to review, at minimum, [the treating physician's] December 2005 restrictions [and another treating physician's] treatment records. And because much of the over 300 pages of medical evidence reflects ongoing treatment and notes by Blakley's treating sources, "we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not "based on a review of a complete case record," quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3.

Similarly, in *Robinson v. Commissioner*, 2009 WL 3124217, which happens also to be a CRPS case, the district court for the southern district of Ohio held as follows:

To the extent the ALJ relied on the opinions of the non-examining state agency doctors ... for the conclusion that plaintiff retains the RFC for a range of sedentary work, his decision is not supported by substantial evidence. The state agency reviewers offered their opinions in April and July 2003, and were without the benefit of any of the medical evidence post-dating July 2003, including any of Dr. Lichota's assessments, progress notes, treatment records, and MRI results. ... Also, the ALJ failed to explain in any illuminating way why he elected to elevate the opinion of a single non-examining doctor over those of plaintiff's treating physicians. ... It is well-settled that Dr. Hutson's opinion as a non-examining doctor was entitled to less weight than the opinions and reports of plaintiff's treating physicians who had treated plaintiff over a period of time. See *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir., 1987). Considering the weight and deference which is to be given to the treating physicians' reports, the opinions of the non-examining state agency physicians ... do not constitute substantial evidence supporting the ALJ's RFC finding.

In this case, the non-examining sources completed the standard physical assessment forms in September and October of 2005 (AR, pp. 164-171 and 208-215). The plaintiff did begin treatment with Dr. Richardson until December of 2005 (AR, p. 269). Hence, as in *Blakley* and

10

*Robinson*, the non-examining sources could not have been aware of and did not take into account the significant treatment records and treating source opinions. Furthermore, the ALJ's recitation of the medical evidence appears incomplete in that he referred to treatment records dated January 29, 2007 (AR, p. 19). However, the administrative record contains treatment records with Dr. Richardson that extend to May 21, 2007 (AR, p. 273). The plaintiff speculates that "[t]he ALJ was transferred from Paducah, Kentucky, to Michigan within a few days after the May 9, 2007, hearing and probably never saw the later records" (Docket Entry No. 13, p. 2).

### Authorities cited by the Commissioner

In his fact and law summary, the Commissioner cites three memorandum opinions from district courts within the Sixth Circuit, all of which involved claims of CRPS, in support of his position that the ALJ did not err in rejecting the treating source medical opinion (Docket Entry No. 14, p. 15). While these cases are not authoritative or binding upon this court, we shall consider each it turn.

In *Osborne v. Commissioner*, 2009 WL 2473536 (E.D.Ky.), the plaintiff suffered from RSDS, which apparently began with a chip fracture of the right ankle. As in the present case, the ALJ accepted the non-examining source opinion in preference to that of the treating source, Dr. Lester. However, unlike the present case, there is no indication that the non-examining source opinion was given in the absence of the treating source records and opinions.

In *Ward v. Commissioner*, 2009 WL 949072 (S.D.Ohio), the court found that the ALJ did <u>not</u> err in declining to find that the plaintiff suffered from "severe" RSDS and that, in any event, the ALJ's RFC was substantially <u>consistent</u> with that given by the treating pain specialist, Dr. Saleh. The magistrate judge concludes that *Ward* does not support a conclusion that the Commissioner may

11

rely upon stale non-examining source assessments that fail to take into account relevant treating source records and opinions.

In *Lorencen v. Commissioner*, 2008 WL 4725152 (E.D.Mich.), the plaintiff developed RSDS after a 60-pound press fell on her left hand cutting it to the base of the middle finger. The court found that the ALJ did not err in discounting the opinion of the treating physician, Dr. Israel, because Dr. Israel's opinion was more restrictive than that of the plaintiff's other treating physician, Dr. Hartman, and because Dr. Israel previously found fewer limitations and "[t]here is no evidence that Plaintiff's condition worsened ... to justify Dr. Israel's dramatic change in opinion." The undersigned concludes that the present case is distinguishable from *Lorencen* because there is no <u>treating</u> medical opinion contrary to that of Dr. Richardson, and Dr. Richardson did not previously opine fewer restrictions.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision that contains an RFC finding that is supported by at least one medical opinion that takes into account the opinions of the treating sources and the treatment record as a whole and which identifies good reasons for the weight given to the treating source medical opinions.

# NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).